IN THE SUPREME COURT OF THE STATE OF DELAWARE

GINA JACBOS,[1]           §
          §    No. 420, 2018
    Respondent Below,     §
    Appellant,            §    Court Below:  Family Court of the
          §    State of Delaware
    v.                   §
          §    File No. 18-03-5TK
DIVISION OF FAMILY SERVICES, §    Petition No. 18-06555
          §
    Petitioner Below,     §
    Appellee,            §
          §
    and               §
          §
OFFICE OF THE CHILD      §
ADVOCATE,            §
          §
    Appellee.            §

Submitted:  December 26, 2018
Decided:  February 26, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

**O R D E R**

(1)	This is an appeal from the Family Court's order of July 11, 2018, terminating the parental rights of Gina Jacbos ("Mother") in her three-year-old son, Conrad.[2]  The parental rights of Conrad's father were terminated in the same order and are not at issue in this appeal.

---

[1] The Court previously assigned a pseudonym to the appellant under Supreme Court Rule 7(d).

[2] The Court has assigned a pseudonym to the child.  Del. Sup. Ct. R. 7(d).

(2)     Mother's counsel has filed a no-merit brief and a motion to withdraw under Rule 26.1(c).  Counsel asserts that she made a conscientious review of the record and found no arguable claim to raise on appeal.  Mother disagrees with her counsel's position and has supplemented the brief with a written submission for our consideration.  Counsel for the Division of Family Services and for Conrad's court-appointed special advocate have responded to the Rule 26.1(c) brief as supplemented and have moved to affirm the Family Court's judgment.

(3)     On December 30, 2016, the Division of Family Services ("DFS") was granted temporary legal custody of Conrad on an emergency basis on the grounds that Mother was unable to care for herself or Conrad due to untreated mental health issues and that Conrad's maternal grandmother ("Grandmother")—with whom Mother and Conrad resided—was unable to care for Conrad on her own.  Conrad's father was incarcerated.

(4)     With the filing of DFS's dependency and neglect petition on January 2, 2017, the mandated hearings ensued.[3]   At each of the hearings, the Family Court found that Conrad was a dependent child and that it was in his best interests to remain in DFS's care and custody.  The court also found that DFS had made reasonable efforts to reunify the family.

---

[3] When a child is removed from home by DFS and placed in foster care, the Family Court is required to hold hearings at regular intervals under procedures and criteria detailed by statute and in the court's rules.  13 *Del. C.* § 2514 (Supp. 2019); Del. Fam. Ct. Civ. R. 212–219.

(5)     In August 2017, Mother entered into a case plan for reunification identifying a number of problem areas that she needed to remediate to achieve reunification with Conrad.  Under the case plan, Mother was required to undergo a competency evaluation, continue mental health counseling, become more independent from Grandmother, comply with services recommended by the Division of Developmental Disabilities, cooperate with a parent aide, keep scheduled appointments with medical providers, take medications as prescribed, and release health information to DFS.

(6)     In November 2017, DFS filed a motion to change the permanency goal from reunification to termination for purposes of adoption.  Mother did not oppose the change in goal, and the motion was granted in February 2018.  In March 2018, DFS filed a petition to terminate Mother's and Conrad's father's parental rights.  The Family Court held an evidentiary hearing in June 2018.

(7)     Mother did not attend the evidentiary hearing held on Monday, June 25, 2018.  Mother's counsel and others who attended the hearing reported that Mother had been hospitalized over the weekend, but that she was released from the hospital on Sunday and was aware of the hearing.

(8)     The Family Court heard from several witnesses at the hearing, including Patricia Kessell, the DFS treatment worker assisting Mother with reunification; Stacy McDevitt, the DFS case worker responsible for arranging

3

visitation with Conrad; and Debra Rickers, Conrad's court-appointed special advocate.

(9)   Ms. Kessell testified about the elements in the case plan and Mother's difficulties in satisfying all but two of those elements.  Ms. Kessell testified that Mother completed the competency evaluation and signed the release forms but did not continue with mental health treatment, comply with services recommended by the Division of Developmental Disabilities, and cooperate with the parent aide.  Ms. Kessell testified that Mother had been in and out of the hospital on a regular basis but did not take her medications as prescribed.

(10)   Ms. Kessell testified that an important element in the case plan was Mother achieving a degree of independence from Grandmother because of the "domestic violence and arguing between them,"[4] but that Mother had "refuse[d] to leave her mother."[5]  When asked if she had concerns about Grandmother's ability to care for Conrad, Ms. Kessell indicated that she did, testifying that "Grandmother was diagnosed with posttraumatic stress disorder and bipolar disorder[,] . . . has a significant cognitive impairment[, and does] not have the basic understanding of child care or age appropriate expectations."[6]

---

[4] Hr'g Tr. at 11 (June 25, 2018).
[5] *Id.* at 13.
[6] *Id.* at 17.

4

(11) Ms. McDevitt testified that there had been no visitation between Mother and Conrad since December 2017. Both Ms. McDevitt and Ms. Rickers testified that Conrad was doing very well in his foster placement. Ms. McDevitt also testified that Conrad's foster home was a potential adoptive placement.

(12) At the conclusion of the hearing, the Family Court Judge advised the parties that the court's written decision would issue within thirty days, adding that "there will be no mystery about it, the evidence is clear and convincing that both mother and father have failed to meet the duties that they have as parents and have failed to plan adequately for this child and for unification with the child."[7]

(13) On appellate review of a termination of parental rights, we are required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[8] We review legal rulings *de novo*.[9] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[10] We conduct a limited review of the factual findings of the Family Court to assure that they are sufficiently supported by the record and are not clearly wrong.[11]

---

[7] *Id.* at 52.
[8] *Wilson v. Div. of Family Servs.*, 988 A.2d 435, 439–40 (Del. 2010).
[9] *Id.* at 440.
[10] *Id.*
[11] *Id.*

5

(14)   In Delaware, the termination of parental rights is based on a two-step statutory analysis.[12]   First, the Family Court must determine whether there is a statutory basis for termination under 13 *Del. C.* § 1103.[13]   If the Family Court finds a statutory basis for termination, the court must determine, under 13 *Del. C.* § 772, whether severing parental rights is in the best interests of the child.[14]   It is incumbent on the petitioner—DFS in this case—to prove by clear and convincing evidence that there is a statutory basis for termination and that the best-interests analysis favors termination.[15]

(15)   In its July 11, 2018 decision, the Family Court found that DFS had proved by clear and convincing evidence that Mother was unable or had failed "to plan adequately for [Conrad's] physical needs or mental and emotional health and development" under § 1103(a)(5).[16] The Family Court found that "Mother's failure to plan is manifest in her lack of commitment and effort to address the various risk factors her situation posed to [Conrad,] even after DFS showed her a way forward." The record supports this finding.

---

[12] *Shepherd v. Clemens*, 752 A.2d 533, 536–37 (Del. 2000).
[13] *Id.*
[14] *See* 13 *Del. C.* § 722(a)(1)–(8) (listing factors to be considered when determining the best interests of the child).
[15] *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 731 (Del. 2008).
[16] 13 *Del. C.* § 1103(a)(5).

(16)   When the statutory basis for termination is failure to plan, there must be proof of at least one additional statutory condition[17] and proof that DFS made *bona fide* reasonable efforts to preserve the family unit.[18]   In this case, the Family Court found proof of more than one additional statutory condition, including that: (i) Conrad had been in the custody of DFS for over one year; (ii) Mother was not able to assume legal and physical custody of Conrad and to pay for his support; and that (iii) failure to terminate Mother's parental rights would cause Conrad continued emotional stability or physical risk because there was little likelihood that Mother can assume care of Conrad in the near future, and that delaying Conrad's placement in a permanent home would be detrimental to his well-being.[19] The record supports these findings.

(17)   On the reasonableness of DFS's efforts to reunite the family, the Family Court found that DFS (i) developed a case plan with Mother that was "thorough, comprehensive, and based upon her particular needs"; (ii) employed the services of a family interventionist to address Mother's parenting issues; and (iii) "facilitated frequent interaction between Mother and [Conrad]."  Having reviewed the record, including the case plan signed by Mother, we agree with these findings as well as

---

[17] *Id.* § 1103(a)(5)(a)(1)–(5) (listing additional conditions).
[18] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).
[19] § 1103(a)(5)(a)(1)–(5).

the Family Court's finding that DFS engaged in reasonable efforts to reunify Mother with Conrad.

(18) When considering the best-interests factors under 13 *Del. C.* § 772, the Family Court found that all but one of the relevant factors favored the termination of Mother's parental rights. When conducting its best-interests analysis the court carefully considered the factors and made factual findings that guided its decision that the termination of Mother's parental rights was in the best interests of Conrad.

(19) On appeal, Mother claims that she was not given the opportunity to demonstrate that she and Grandmother together could raise Conrad. Mother's claim is not supported by the record. The Family Court found that Mother did not avail herself of the assistance offered by DFS to address her parenting issues and that Grandmother "was incompetent to care for [Conrad]." The record supports those findings.

(20) Having carefully reviewed the parties' positions and the record on appeal, we can discern no abuse of discretion in the Family Court's factual findings and no error in the court's application of the law to the facts when terminating Mother's parental rights. We therefore conclude that Mother's appeal is wholly without merit and devoid of any arguably appealable issue. We are satisfied that Mother's counsel made a conscientious effort to examine the record and the law and properly determined that Mother could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice